JEROME M. ORBACH, Petitioner-Appellant, *v.* RALPH H. AXELROD *et al.*,
Respondents-Appellees.

First District (1st Division)    No. 80-2363

Opinion filed October 5, 1981.

Michael Kreloff and Franklin S. Schwerin, both of Chicago, for appellant.

Michael L. Levinson, Andrew M. Raucci, and Michael P. McClelland, all of Chicago, for appellees.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Jerome M. Orbach (petitioner) filed an election contest after the Board of Election Commissioners declared Ralph H. Axelrod (respondent) elected Democratic Ward Committeeman for Chicago's 46th Ward. The trial court found for respondent. In his appeal, petitioner raises a variety of issues relating to the validity of the trial court's rulings in regard to whether certain ballots were properly counted. For the following reasons we reverse and remand this cause to the circuit court of Cook County with directions to dismiss the petition.

The parties were candidates for Democratic Ward Committeeman for Chicago's 46th Ward in the March 18, 1980, primary election. The 46th Ward contains 53 precincts and comprises the Uptown and Edgewater neighborhoods of Chicago's north lakefront. It utilizes automatic voting machines, punch card ballots and paper ballots for absentee voting. On March 28, 1980, the Board of Election Commissioners, which administers elections within the city of Chicago, proclaimed the respondent elected by a margin of two votes. Both parties filed for a discovery recount pursuant to statute. (Ill. Rev. Stat. 1979, ch. 46, par. 22—9.1.) Furthermore, petitioner filed his petition for election contest on April 25, 1980. The amended verified petition alleged that petitioner was a resident, elector and legal voter of the 46th Ward as well as a candidate. It alleged irregularities as to the voting procedure in a number of precincts. It specifically alleged that certain ballots were invalidated because the respective voters involved were not duly registered qualified voters, that certain absentee ballots should not have been counted because they had been handled by non-election judges, that the failure of election judges to properly initial certain absentee ballots invalidated these ballots and that several absentee and punch card ballots had not been tallied for various unstated reasons. According to the amended verified petition, had the

foregoing votes been handled and tallied properly, petitioner would have been proclaimed ward committeeman.

Respondent filed responsive pleadings including an amended counterclaim alleging certain irregularities in the counting of various ballots and a motion to dismiss the petition. The motion alleged that the petition had not been filed within the statutory time limit for filing such petitions (Ill. Rev. Stat. 1979, ch. 46, par. 7—63) and challenged the jurisdiction of the trial court to hear the contest. After a hearing, the trial court denied the motion. The trial court also denied respondent's motion for certification of the question to this court pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308).

After hearing testimony and examining the ballots at issue the trial court concluded that both candidates' votes should be increased due to changes required by his rulings as to various votes. He further declared that respondent was elected to the position of ward committeeman, however, only by a margin of 1.84 votes rather than the earlier determined 2-vote margin. It is from this judgment that petitioner appeals. Because we believe that the trial court improperly denied respondent's motion to dismiss, we find it unnecessary to extensively detail the testimony concerning either the preservation of the ballots or the voting irregularities raised by both parties. In the view that we take of this case the only question we must address is the construction of several provisions of article 7 and article 23 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 1—1 *et seq.*).

The Election Code codifies the election and primary laws of this State and provides for the time for holding elections, voter qualifications and registration, nomination of candidates, procedural aspects of the elections and post-election procedures. Article 7 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 7—1 *et seq.*) encompasses virtually unchanged the primary election act of July 6, 1927, which regulated the nomination and election of primary candidates. In a primary election, candidates vie for nomination as their party's candidate for State, congressional, judicial, city, county, village, town, municipal district and township offices. Additionally, precinct, township, ward and State central committeemen and delegates and alternate delegates to national nominating conventions are elected at primary elections. It should be emphasized that neither the Election Code nor the earlier primary election laws granted authority to political parties to nominate and elect candidates but rather "recognizes such power existing in them, and prescribes the manner in which it shall be exercised." (*People v. Kramer* (1928), 328 Ill. 512, 160 N.E. 60.) Article 23 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, pars. 23—1 *et seq.*) generally provides for contesting elections. It specifically regulates who

may bring an election contest and grants jurisdiction to the circuit courts over various types of election contest.

Respondent's motion to dismiss contended that the petition for election contest had not been timely filed. It alleged that section 7—63 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 7—63) required the filing of the election contest within 10 days of the March 28, 1980, proclamation of the official election canvass. The petition for election contest was filed April 25, 1980, and accordingly was filed approximately 28 days after the official proclamation. Petitioner's contention in the trial court and in this court is that, because the instant election contest pertained to an election rather than a nomination, it was not covered by the provisions of article 7, which pertained to primaries and nominations, but rather was covered by article 23, which provides for the contests of elections. Petitioner specifically relies upon section 23—20 (Ill. Rev. Stat. 1979, ch. 46, par. 23—20), whereby an elector may file a petition for election contest within 30 days of the official proclamation and points out that his petition was filed on April 25, 1980, within 30 days of the March 23, 1980, proclamation of the official election canvass.

The only decision of this court which has addressed the construction of articles 7 and 23 is *Whitsell v. Rutherford* (1969), 118 Ill. App. 2d 401, 255 N.E.2d 34 which involved an election contest by a candidate for precinct committeeman in Madison County. The trial court there granted a motion to dismiss on the basis that the petition for election contest was not timely filed and, moreover, did not state a cause of action. On review, the court held that section 7—63 (Ill. Rev. Stat. 1979, ch. 46, par. 7—63), which provides for primary election contests, failed to provide a procedure for contesting a precinct committeeman's election. Therefore, the court determined that the legislature did not intend article 7 to be the exclusive means of contesting an election for precinct committeeman. The court then turned to a consideration of the provisions of article 23. The court noted that section 23—5 (Ill. Rev. Stat. 1979, ch. 46, par. 23—5) provides for the grant of jurisdiction to the circuit court to hear election contests of "all other county, township and precinct officers, and all other officers for the contesting of whose election no provision is made" and that the term "precinct officers" used therein could only refer to the position of precinct committeeman. Thus, the court concluded that an election contest for a precinct committeeman could be brought properly under section 23—20 (Ill. Rev. Stat. 1979, ch. 46, par. 23—20), which provides for the filing of a petition for election contest within 30 days from the date a candidate is declared elected.

Petitioner contends that the *Whitsell* court's construction of article 23—5, as applicable to the contest of a precinct committeeman, should be extended to include ward committeeman. Petitioner urges this argument

is supported by Illinois decisions which have construed the "all other officer" language of section 23—5 to refer to other officers of the same or like grade or class. (*Baker v. Shinkle* (1911), 249 Ill. 154, 94 N.E. 58; *Misch v. Russell* (1891), 136 Ill. 22, 26 N.E. 528; *Brush v. Lemma* (1875), 77 Ill. 496.) In *Misch*, the court held that the phrase "all other officers" cannot be limited to officers specifically named in this provision as this would violate the rule of statutory construction known as *ejusdem generis* as well as the rule that no word in a statute shall be construed to be superfluous. Moreover, in holding that the court had jurisdiction over the election contest of a school district board of education president, the supreme court noted that the officers specifically named in this provision are officers of quasi-municipal corporations. From this the court reasoned that the phrase "all other officers" should be construed as including all like officers of quasi-municipal corporations. It would appear using this analysis that a ward would constitute a quasi-municipal corporation similar to a precinct and a ward committeeman would constitute the only possible ward officer whose election would be contested under this provision. See *Whitsell v. Rutherford.*

We find a strong differentiation between *Whitsell* and the case at bar. The pertinent section 5 of article 23 (Ill. Rev. Stat. 1979, ch. 46, par. 23—5) relied on by petitioner authorizes the circuit court to hear election contests "of all other county, township and precinct officers, and all other officers for the contesting of whose election no provision is made."

■■ A "precinct officer" in Madison County may conceivably be covered by that language. However, a ward committeeman is not and cannot be classified as a county officer. He is, rather, a party officer. The pertinent statute provides for and describes the duties of various county officers who are governing officials. (See Ill. Rev. Stat. 1979, ch. 34.) On the contrary, a ward committeeman is not a governing official but is strictly and only a political functionary.

■■ The rules of statutory construction require this court to determine and follow the intent of the legislature's acts. (*Carey v. Elrod* (1971), 49 Ill. 2d 464, 275 N.E.2d 367.) As the court explained in *Huckaba v. Cox* (1958), 14 Ill. 2d 126, 131, 150 N.E.2d 832,

> "It is a cardinal rule of statutory construction that the intent and meaning of a statute are to be determined from the entire statute. A statute is passed as a whole and not in parts. Each section and provision should be construed in connection with every other part or section. [Citation.] In *Scofield v. Board of Education*, 411 Ill. 11, we said, at page 15: 'It is a generally accepted principle of statutory construction, and has been so held by this court many times, that in construing a statute or determining its constitutionality, all its sections are to be construed together in the light of the general

purpose and plan, the evil intended to be remedied, and the object to be obtained, and if the language is susceptible of more than one construction, the statute should receive the construction that will effect its purpose rather than defeat it.' "

This rule has been specifically applied in construing the Election Code in *Young v. Mikva* (1977), 66 Ill. 2d 579, 363 N.E.2d 851, and *Carey v. Elrod* (1971), 49 Ill. 2d 464, 275 N.E.2d 367. Moreover, the consequences resulting from various constructions of an act must also be taken into consideration. (*People ex rel. Holland v. Edelman* (1975), 27 Ill. App. 3d 793, 327 N.E.2d 338.) Where several constructions may be placed upon a statute, the court should select that which leads to a logical result and avoid one which the legislature could not have contemplated. *Board of Education v. Community High School District No. 211* (1967), 89 Ill. App. 2d 481, 232 N.E.2d 316; *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 242 N.E.2d 267.

An analysis of article 7 as a whole reveals a comprehensive, all inclusive approach to regulating the course and conduct of primary elections ranging from petitions for nomination, the qualifications of voters at a primary, procedures for the election itself and post-election procedures, including section 7—63 concerning primary contests which is at issue here. In fact, the article's scope of subject matter closely parallels the subject matter of the remaining articles of the Election Code which deal with general elections. The legislature's approach in this article clearly evidences an intent to regulate every aspect of the nomination or election of candidates at a primary including the contest of elections.

■■ This conclusion is buttressed by reference to section 7—1. It provides that the nomination of certain specified candidates as well as the election of certain specified candidates, including ward committeeman, *"shall be made in the manner provided in this article 7, and not otherwise."* We believe that section 7—1's declaration, that elections held at a primary shall be made only in the manner set forth in article 7 was intended to limit the contest of said elections to the primary contest provision found in this article, section 7—63. We reach this determination on the basis that an election contest is merely one of several procedures in article 7 relating to post election procedures. Moreover, a contest is intrinsically related to the holding of the election.

To accept petitioner's theory in this regard we would be required to overlook the important words "and not otherwise." This would effectively emasculate the statute and would be contrary to "the fundamental rule that each word, clause or sentence must, if possible, be given some reasonable meaning. *Hirschfield v. Barrett* (1968), 40 Ill. 2d 224, 230, 239 N.E.2d 831.

Our examination of the entire article 7 convinces us that the time of

filing of this contest is governed by section 63 of article 7. To begin with, section 1 of article 7 (Ill. Rev. Stat. 1979, ch. 46, par. 7—1) expresses specifically that it is applicable to "the election of precinct, township, ward and State central committeemen ° ° °." In addition, section 63 of article 7 (Ill. Rev. Stat. 1979, ch. 46, par. 7—63) provides specifically:

> "Authority and jurisdiction are hereby vested in the circuit court or in the judges thereof, to hear and determine primary contests."

A few lines above this statement, the same section (par. 7—63) provides:

> "*Any candidate whose name appears upon the primary ballot* of any political party *may contest* the election of the candidate or candidates nominated for the office for which he was a candidate by his political party, upon the face of the returns, by filing with the clerk of the circuit court a petition in writing, setting forth the grounds of contest, which petition shall be verified by the affidavit of the petitioner or other person, and which petition *shall be filed within 10 days after the completion of the canvass* of the returns by the canvassing board making the final canvass of returns. The contestant shall also file with that canvassing board (and if for the nomination for an office, certified tabulated statements of the returns of which are to be filed with the State Board of Elections, also with the county canvassing board), a notice of the pendency of the contest." (Emphasis added.)

Considering all of these portions of the statute which must necessarily be read and construed together, it seems inescapable that candidates for the office of ward committeeman are to be elected at the time of the primary or, as it is sometimes called, the primary election. In addition, if this type of election is to be contested, the proceedings in such contest are governed by the same article 7. In fact, the statutory heading above section 63 of article 7 is "Primary election contest." We find from this language a clear legislative intent to provide for every aspect of the election of ward committeeman including the filing and management of election contests.

As we have already explained, we believe that section 7—1's declaration that elections held at a primary election shall be made only in the manner set forth in article 7 evidences a clear intent to provide in article 7 for every aspect of an election including the contest of the election, and we believe that the legislature intended section 7—63 to provide for primary contests whether from a nominated office or an elected office. This intent is consistent with the purpose of the Act to promote the integrity of the political party system in Illinois. Moreover, we note that as the officers elected at a primary are political party functionaries it is not unreasonable for the legislature to regulate such elected officers under the

same scheme as political nominees. All primary candidates are vying for a position within a particular political party. Moreover, party officers elected at a primary have the same time considerations as do party nominees in that it is imperative that the question of whether a candidate has been properly elected to a political office be resolved so that he or she can begin to fulfill the party obligations inherent in the office. Based on all of the foregoing, it would appear that it is consistent with the goal of maintaining the integrity of political parties that election contests for elected party offices proceed under the same expedited election contest procedure as contests for political nominees.

■■ Alternatively, approaching the problem from another point of view, words may be added, deleted or changed in a statute to effectuate the legislative intent. (*People ex rel. Carson v. Ring.*) This recognizes the rule that the intention of the legislature is to be gathered not only from the language used but also from the reasons for the enactment and the purposes to be attained. (*People ex rel. Carson v. Ring; In re Estate of Curtis* (1963), 28 Ill. 2d 172, 190 N.E.2d 723; *Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 153 N.E.2d 72.) Indeed, as the court noted in *Smith v. County of Logan* (1918), 284 Ill. 163, 165-66, 119 N.E.2d 932:

> "In construing a statute the court will not be confined to its literal meaning. A thing within the intention is regarded within the statute although not within the letter. A thing within the letter is not within the statute if it is not within the intention. When the intention has been thus ascertained from the reading of the statute, words may be modified or altered so as to obviate all inconsistencies with such intention. [Citations.]"

Accordingly, we believe that this court has the authority to read section 7—63 in such a way as to add the words "or elected" after the word nominated to effectuate the intent of the legislature. As amended the section would then read as follows: Any candidate whose name appears upon the primary ballot of any politial party may contest the election of the candidate or candidates nominated or elected for the office for which he was a candidate by his political party. *People v. Hudson* (1970), 46 Ill. 2d 177, 263 N.E.2d 473; *People ex rel. Carson v. Ring.*

Based on the foregoing analysis we must reject petitioner's contention that the legislature clearly established two statutory schemes for election contests, one pertaining to elections where a candidate is nominated for an office and the other where the candidate is elected to office. He hypothesizes that the legislature decided to distinguish between these two types of contests from a nomination and 30 days from an election in recognition of the fact that an expedited election contest procedure is needed for the contest of a nomination due to the fact that there are only a

few months to conduct an election contest after the primary before a general election occurs. Under this view the 10-day filing requirement in the expedited election contest insures a decision prior to the general election, whereas it is argued that no such expedited procedure is necessary where the candidate for an elected office will not face a general election.

■■ We also reject petitioner's contention that the 10-day filing requirement could not be applicable where a candidate is elected at a primary because the parties to an election may file for a discovery recount pursuant to section 22—9.1 (Ill. Rev. Stat. 1979, ch. 46, par. 22—9.1), whereas a candidate who is nominated at a primary may not seek a discovery recount. In the instant case petitioner notes that both parties filed for discovery recounts and the recounts did not commence until after the running of the 10-day filing period provided in section 7—63. Consequently, it was impossible to incorporate the results of the discovery recount into the petition for election contest within the 10-day period. Petitioner specifically argues in his brief before this court that "it would be irrational to assume that the legislature would provide for a discovery recount for the election of Ward Committeeman without providing even a modest period of time in which to incorporate in the ensuing election contest the facts brought to light in the discovery recount." We believe that the parties could seek to amend a timely filed petition for election contest to incorporate the findings of the discovery recount in time to avoid an adverse ruling from a motion to dismiss based, for instance, on allegations of lack of specificity. Moreover, we note that there is no allegation in the record that either or both parties sought to get the discovery recount commenced within the 10-day period.

■■ Election contests are statutory in nature and, therefore, jurisdiction and procedure are strictly governed by the specific statutory provisions. (*Young v. Mikva* (1977), 66 Ill. 2d 579, 363 N.E.2d 851; *Nesladek v. Kanka* (1930), 341 Ill. 180, 173 N.E. 94; *Waupoose v. Kusper* (1972), 8 Ill. App. 3d 668, 290 N.E.2d 903.) Under this general rule, failure to timely file an election contest is fatal and divests the court from proceeding with the contest. (*Patterson v. Crowe* (1944), 385 Ill. 2d 514, 53 N.E.2d 415.) We need not consider the merits of this situation as argued in the briefs.

The order of the circuit court of Cook County denying respondent's motion to dismiss the petition is reversed and the cause is remanded with directions to dismiss the petition for election contest.

Order reversed and cause remanded with directions.

GOLDBERG and McGLOON, JJ., concur.