TIMOTHY C. EVANS, Plaintiff-Appellant, v. TONI PRECKWINKLE *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—91—2173

Opinion filed February 16, 1994.

GREIMAN, J., specially concurring.

Thomas E. Johnson, of Johnson, Schaaf, Jones & Snelling, of Chicago, for appellant.

Mathias W. Delort and Burton S. Odelson, both of Odelson & Sterk, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
On April 2, 1991 Toni Preckwinkle and Timothy Evans faced off in an election bid to become the next alderman of the 4th ward in the City of Chicago. Immediately following the election, Preckwinkle was declared the unofficial winner, winning with less than a 5% majority over Evans. On April 4, 1991, less than two days after the election, Evans filed a petition for a discovery recount with the Board of Election Commissioners of the City of Chicago (Board of Elections), wherein he demanded an immediate discovery recount. (See Ill. Rev. Stat. 1991, ch. 46, par. 22—9.1.) In accordance with statutory guidelines, the Board of Elections refused to conduct the discovery recount until the official results were proclaimed on April 9, 1991.

However, in accordance with statute, Evans was required to file an election contest complaint within five days of the election or on April 8, 1991, which he did. (Ill. Rev. Stat. 1991, ch. 24, par. 21—27.) Evans' initial complaint alleged certain irregularities in the election, which he had learned based upon poll watchers and other individuals with firsthand knowledge of events which occurred on election night. With this complaint, Evans concurrently filed a motion for leave to

amend pending discovery and the results of the recount. The court continued the motion.

The discovery recount process was not complete until April 29, 1991. Preckwinkle was declared to be the winner by a margin of 109 votes. After all but one of the precincts had been counted, Evans presented his first amended complaint, incorporating the results of the recount, on April 24, 1991.

On June 5, 1991, the trial court rendered its written judgment order finding that the initial complaint failed to sufficiently allege with specificity at least 109 votes which were mistallied. The initial complaint was, therefore, dismissed with prejudice. Secondly, the first amended complaint was found to be legally insufficient because it was filed beyond the statutory deadline of April 8, 1991. The motion for leave to amend, which was timely filed on April 8, 1991, was also denied.

■ On appeal, appellant argues that the first amended complaint should not have been dismissed under the election statutes. There are two statutes which must be concurrently read within the context of this case. The first governs the filing of the initial complaint and its legal sufficiency:

"Any candidate whose name appears on the ballots used in any ward of the city at any election for alderman, may contest the election of the candidate who appears to be elected *** by filing within 5 days after such election with the Clerk of the Circuit Court of Cook County, a complaint in writing, verified by the candidate making the contest, setting forth the grounds of the contest. *** *In case the court shall decide that the complaint is insufficient in law,* or that the candidate who appears to have been elected on the face of the return has been duly elected, *the complaint shall be dismissed.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 24, par. 21—27.

■ Whether or not a complaint is "legally sufficient" may depend on the interpretation of one or more election laws, including:

"A court hearing an election contest pursuant to this Article or any other provision of the law shall grant a petition for a recount properly filed where, based on the facts alleged in such petition, there appears a reasonable likelihood the recount will change the results of the election." Ill. Rev. Stat. 1991, ch. 46, par. 23—23.2.

On appeal Evans contends that absent the allowance of his first amended complaint, under the election laws, he is forced to argue his entire case without first availing himself of the fruits of the discovery recount. In election contests other than Chicago aldermanic elections, candidates are given 17 days to file an election contest in court. Chicago aldermen, however, are held to stricter standards and they must file an election contest within five days of the election. Ill. Rev.

Stat. 1991, ch. 24, par. 21—27; *Robinson v. Jones* (1989), 186 Ill. App. 3d 82, 542 N.E.2d 127.

Evans contends that the trial court's holding, that an aldermanic pleading may never be amended in order to incorporate the results of a discovery recount, renders the contest statute of the Election Code a nullity. Section 22—9.1 of the Election Code, which permits losing candidates to examine all of the election paperwork in one-quarter of the precincts to find errors, applies to all candidates. Such information is made available to the candidate provided he or she files a discovery recount petition with the Board of Election within five days "after the last day for proclamation of the results of any canvass" or within 12 days of the election. Where the count is incorrect, the losing candidate is then given up to 37 days after the election to file a challenge in court. See Ill. Rev. Stat. 1991, ch. 46, par. 23—20.

Chicago alderman, however, are treated differently as they must file their election contest within five days of the election. Although Evans filed his initial challenge within the statutory time frame, he then attempted to file a first amended complaint on April 24, 1991, after the expiration of the five-day period. However, within that original five-day period, Evans had filed a motion for leave to amend his original complaint, explaining that he wanted to incorporate the results of the election recount.

In support of his argument that his first amended complaint was improperly dismissed, Evans relies on *Orbach v. Axelrod* (1981), 100 Ill. App. 3d 973, 427 N.E.2d 399. *Orbach* involved a ward committeeman contest, wherein the election contest was required to be filed within a 10-day period. As in the case *sub judice*, Orbach sought to incorporate the results of the discovery recount in his election complaint, so he waited until after the expiration of the 10-day period to file. While the court held that the complaint not filed within the statutory time limit must be dismissed, it also found that a petition first filed within the 10 days could always be amended to incorporate the discovery recount:

> "We believe that the parties could seek to amend a timely filed petition for election contest to incorporate the findings of the discovery recount in time to avoid an adverse ruling from a motion to dismiss based, for instance, on allegations of lack of specificity. Moreover, we note that there is no allegation in the record that either or both parties sought to get the discovery recount commenced within the 10-day period." *Orbach*, 100 Ill. App. 3d at 981, 427 N.E.2d at 405.

Similarly, in the seminal case of *Joyce v. Blankenship* (1948), 399 Ill. 136, 77 N.E.2d 325, the court found, in an election contest where there were many irregularities in the election contest complaint and

the complaint was dismissed, that the plaintiff should have been permitted to file an amended complaint. The court found:

"Even though the complaint was not as complete as it should be, we think sufficient good points of contest were set out, and no doubt if the amendment had been permitted, the objections as made to the complaint would have been obviated. The serious question presented is the denial of plaintiff's motion to amend. A proceeding to contest an election is statutory and is not a proceeding in chancery, but after the petition is filed the case is to be tried in like manner as cases in chancery. The practice of dismissing a [complaint] is confined to cases where there is a want of equity upon the face of the [complaint], where it is manifest that no amendment can aid it, or where there is a want of jurisdiction. [Citations.]" *Joyce*, 399 Ill. at 141, 77 N.E.2d at 328.

Preckwinkle relies on the cases of *Zahray v. Emricson* (1962), 25 Ill. 2d 121, 182 N.E.2d 756, and *Young v. Washington* (1984), 127 Ill. App. 3d 1094, 470 N.E.2d 14, for the proposition that an election contest complaint cannot be amended where the original timely filed petition or complaint cannot withstand a motion to dismiss. In *Zahray*, the amended petition to contest election was dismissed where the trial court found the plaintiffs had not made out a *prima facie* case entitling them to a recount. On appeal, the court affirmed finding that the amended petition failed to set forth the number of votes cast in the election or the number of votes received by each of the candidates; nor did it allege that votes cast for one candidate were deserving to another. The petition was drafted in broad and general allegations regarding irregularities in the election process. As to its drafting, the court stated:

"And while the pleadings in contest proceedings are not required to comply with the strict technical rules applicable in civil actions, there should be such strictness as will prevent the setting aside of the acts of sworn officials without adequate and well defined cause." *Zahray*, 25 Ill. 2d at 124, 182 N.E.2d at 758.

In *Young*, it was held that where a court hears an election contest petition, at some point a preliminary determination must be made as to the sufficiency of the petition. Where the petition is found lacking and the time for filing a suit has lapsed, the court is without jurisdiction to permit the filing of amendments to the pleadings.

However, it should be noted that *Young* is factually inapposite to the case *sub judice*, since *Young* involved whether a *second* amended complaint could be filed. The court implicitly approved of the filing of the *first* amended complaint which was filed within the statutory deadline for filing an election contest.

■ In this case, Timothy Evans filed a motion for leave to amend his election contest complaint within the statutory five-day deadline

following the election. In this motion, he requested to amend his complaint pending the results of the discovery recount. The trial court eventually dismissed the original complaint as well as the first amended complaint.

While the sufficiency of the original complaint has not been raised by appellant, we would simply note that in its findings regarding the "sufficiency" of the original complaint, the trial court availed *itself* of the findings of the discovery recount in determining whether the original complaint was sufficient. However, pursuant to the guidelines set forth in *Young v. Washington* and its progeny, this is not the appropriate standard to be applied. The complaint requires a statement which is a positive and clear assertion that a recount will change the outcome of the election.

After the election recount there was a difference of 109 votes between the candidates. In his first amended complaint, Evans alleged with specificity: (1) the number of votes cast for each candidate; (2) a specific number of uninitialed ballots cast for Preckwinkle, broken down by precinct; (3) a substantial number of voters who allegedly voted without proper voter identification; and (4) numerous and substantial other voting irregularities for many specified precincts. At the end of the complaint, Evans alleges that Preckwinkle's total should be reduced by 311.38 votes and that his total should be increased by three votes.

While we do not pass on the viability of Evans' mathematics, as this is the function of the trial court, we find that Evans has drafted a good-faith petition which was timely filed within the statutory deadline. Evans has set forth statements declaring with particularity the specific precincts in which the mistake, fraud or irregularity were believed to have occurred. The mathematical totals also support the possibility of a change in the result of the election. Moreover, because his original complaint was filed within the statutory five-day deadline, any amendment filed outside of the deadline, made promptly and in good faith, should have related back to the original filing date. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—616.) Thus, the trial court should have considered the sufficiency of the second and not the first complaint.

Based upon the foregoing facts and case law, we reverse and remand the dismissal of the first amended complaint with instructions that the allegations contained therein should be considered on their merits and a final proclamation as to the winner be made.

Reversed and remanded.

CERDA, J., concurs.

JUSTICE GREIMAN, specially concurring:

I agree with the majority that plaintiff should have had an opportunity to amend his original petition. Without such an opportunity, the right to contest election results of a race for the office of alderman in the City of Chicago is an empty privilege.

For the sake of judicial economy, the parties have asked us to examine the sufficiency of the first amended complaint to determine whether there appears to be a reasonable likelihood that the recount will change the results of the election. The majority has chosen not to make that determination and, although I am prepared to rule upon the several items in the complaint as to whether they constitute proper grounds for changing or adjusting the original count, I do agree with the majority that we should remand this matter to the trial court for the mathematical computation necessary for the ultimate disposition of the controversy.

Both parties cite *Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 561 N.E.2d 585, which has become the leading decision in Illinois for determining the validity of ballots cast. *Pullen* reminds us that the cutting edge in all of the election cases is the recognition of the proper purpose of the mechanics of election and the importance of giving effect to the voters' will in certain instances even though there has not been strict compliance with statutory provisions of the Election Code.

Generally, statutes that proscribe the duties of election officials are mandatory if they state that noncompliance voids the ballot, but are directory if they do not. (*Pullen*, 138 Ill. 2d at 46.) Moreover, the failure of officials to do their precise duty under the Election Code should not invalidate a ballot if the spirit of the law has not been violated and the voters' intention can be fairly ascertained. *Pullen*, 138 Ill. 2d at 47; *Craig v. Peterson* (1968), 39 Ill. 2d 191, 233 N.E.2d 345.

*Pullen* has further recognized a distinction between those cases when the petitioner claims that the election is permeated with fraud and those, as in the case at bar, where there is no allegation of fraud.

With these principles of construction firmly in mind, I would determine that the following paragraphs of plaintiff's first amended complaint are appropriate allegations which would support his request for relief:

Paragraph 8: In-precinct uninitialled ballots should not be counted;

Paragraph 9: An uncounted vote should be added to the Evans' total;

Paragraph 10: The absence of any sworn election judge's initials on the ballots should render them void;

Paragraph 11: The casting of ballots which were prepared for an earlier election is not overcome by the judges' actions in recasting them. It is difficult to imagine anything that might make election results more suspect;

Paragraphs 17 and 24: Votes that are evidenced by neither a binder entry, affidavit nor a poll sheet notation should not be counted;

Paragraph 19: The two votes cast by a single voter should be adjusted notwithstanding this voter's zealous dedication to participate in the electoral process; and

Paragraph 23: The trial court must make adjustment for an over-vote in the several precincts where this occurred.

On the other hand, the voters' intentions and their right to cast their ballots in accordance with such intention should not be frustrated by the following allegations in plaintiff's first amended complaint:

Paragraph 12: Noting the wrong precinct number on the judge's oath of office should not invalidate ballots initialled by that judge in the precinct to which she was assigned;

Paragraphs 13, 14, 15, and 16: Errors of omission in the affidavits for voters' assistance should not disenfranchise people who have come to cast their votes despite great personal or physical difficulties;

Paragraphs 18 and 20: Wrong or missing addresses should not invalidate the ballots cast where the identity of the voter can be otherwise ascertained by the judges of election;

Paragraphs 21 and 22: Printed, rather than cursive, written names and slightly differently spelled names should not be discounted;

Paragraph 25: Ballots not received by election day should not be counted; and

Paragraph 26: Where there is no fraud alleged, printing the name of the candidate on the ballot cannot be taken as an identifying mark requiring that it not be considered.

The parties suggest that we should make these determinations in the "interest of judicial economy"; however, I must wonder whether that statement is somewhat tongue-in-cheek considering that we are still adjudicating the 1991 city elections at a time when politicians, media, an army of consultants and even a few interested citizens are beginning to think about the 1995 city elections. The parties must share some of the blame since it took them a year to complete their briefing. However, as I observed in my dissent in *McDunn v. Williams*

(1992), 247 Ill. App. 3d 935, 947-50, 618 N.E.2d 262, *vacated* (1993), 156 Ill. 2d 288, 620 N.E.2d 385 (with due apologies for quoting myself), the parties are innocent victims of the process and "[w]hether by new legislative initiatives or supreme court rule, we should consider development of summary and expedited procedures to insure that the will of the electorate is not again frustrated." *McDunn*, 247 Ill. App. 3d at 950.