(No. 17179.—Judgment affirmed.)
RICHARD FLOWERS, Appellant, *vs.* THOMAS J. KELLAR, Appellee.

*Opinion filed June 16, 1926—Rehearing denied October 8, 1926.*

1. ELECTIONS—*ballots of unregistered voters under the general Election law are presumed legal in absence of contrary showing.* Ballots of unregistered voters which have been received and deposited in the ballot-box by the judges of a village election held under the general Election law of 1865 are presumed legal in an election contest until the contrary is shown, as the provision of section 7 of the act that no vote shall be received if the name of the voter is not registered unless affidavits are furnished as prescribed in the act is merely directory.

2. SAME—*method of deducting illegal votes in election contest.* Where the evidence in an election contest does not disclose for which candidates votes found illegal were cast, the illegal votes are eliminated by dividing them between the candidates in the proportions that the total votes cast for each bears to the total cast in the precinct, first deducting, however, any illegal votes known to have been cast for either candidate.

3. SAME—*when presence of interested party about polling place will not vitiate an election.* While the presence of an interested party, without proper credentials, within the prohibited area about a polling place is highly improper it does not necessarily invalidate an election in the absence of a showing of an attempt to influence voters or to interfere with their voting, as an irregularity which does not affect the result of an election will not vitiate it.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

FRANK W. DERBY, for appellant.

FELSENTHAL, STRUCKMANN & BERGER, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

At the annual election in the village of Robbins, in Cook county, on April 21, 1925, Richard Flowers and Thomas J. Kellar were opposing candidates for the office of village president. Kellar was declared elected and Flowers filed a petition in the circuit court to contest the election. The petition charged that a register of voters prepared for the township in which the village of Robbins is situated was used and that a large number of persons qualified to vote at a township election but not at the village election were permitted to vote; that persons otherwise disqualified voted at the election; that fraudulent affidavits concerning the qualifications of voters were made; that the fraudulent voting was done at the instigation and with the connivance of Kellar and his supporters; that Kellar attempted to influence voters in his behalf within a few feet of the polling place, and that a plurality of the qualified electors voted for the petitioner. Kellar, by his answer, denied the charges of fraud and misconduct at the election. Evidence was heard and by the court's judgment Kellar was declared elected. Flowers prosecutes this appeal.

The returns of the election made by the judges and the clerks showed that Kellar received 219 votes, Flowers 209 votes, and that six ballots were blank or defective. The board of trustees of the village canvassed the election returns, found the same result and declared Kellar elected. There was no re-count of the ballots on the hearing.

Appellant complains that ballots were cast at the election by three aliens, three minors, five non-residents and by seven unregistered persons without requiring affidavits of

their qualification. The evidence with reference to these complaints will be reviewed in the order stated.

Thomas and Gertrude Anderson and their daughter, Minnie Anderson, voted at the election. Appellee's counsel admitted that the parents had not been naturalized and that the daughter was not qualified to vote at the election. These three votes should not have been received or counted.

Albert Starks, Clark Harper and John Brown, Jr., voted. The names of Starks and Harper appeared on the register. Starks testified that he was born in 1903. An employee of an insurance company testified that Harper made an application for insurance about January, 1925, and stated at the time that he was in his twentieth year. A sister said that he became of age on March 2, 1925. The names of Starks and Harper appeared upon a school register in 1913, and it showed their ages as five and eight years, respectively. A witness testified that Brown admitted he was only seventeen years old when the election occurred. By a preponderance of the evidence these three young men were minors and could not vote.

The name of Angeline Lewis appeared on the register. She admitted that her permanent place of abode was in Chicago although she voted in Robbins. Joseph Foy's right to vote was questioned because a person who made a canvass both before and after the election failed to find that Foy resided in the village. Foy testified that he was twenty-four years of age and lived in the village. Rosa Howard, according to the testimony of a neighbor, came to Robbins from Arkansas on February 18, 1925. Mrs. Howard testified that she had lived in Robbins since March 7, 1924, but admitted that she had been absent from the village for some time. Although Henry McDuffy's name appeared on the register and he voted, it was shown that he resided in Chicago at the time of the election. The name of Eugenia Horton was also upon the register. She had an address in Chicago where her mother and children lived. She kept

her trunk at her mother's home and her suitcase in Robbins. The woman with whom Mrs. Horton said she lived in Robbins testified that Mrs. Horton left there in December, 1924. Four of these persons, Angeline Lewis, Rosa Howard, Henry McDuffy and Eugenia Horton, were non-residents, and only the fifth, Joseph Foy, was qualified to vote at the election.

W. M. Humphrey, Mary Humphrey, Johanna Briggs, Mae Dillard, Eveline Carter, Edward Robinson and Nannie Smith voted although their names did not appear on the register. No affidavits that these persons were inhabitants of the village and entitled to vote at the election were found. There was testimony that the house which W. M. and Mary Humphrey once occupied was uninhabitable when the election occurred. On the contrary, two witnesses testified that they were acquainted with them and that they resided in Robbins on election day. While the register failed to show the name of Johanna Briggs, it did have the name Johanna Bridges. Eveline Carter had been divorced from her husband and resumed her maiden name, Thomas, which appeared on the register. Edward Robinson testified that at one time he was in the county institution at Oak Forest but resided in Robbins at the time of the election and that he voted. No testimony was offered concerning Mae Dillard or Nannie Smith. It does not appear that at the election the seven unregistered persons were challenged or that objection was made to their voting.

The election in question was held under the general Election law and not under the City Election act. The provision of section 7 of the "act for the registry of electors and to prevent fraudulent voting," approved and in force February 15, 1865, (Cahill's Stat. 1925, p. 1081,) that no vote shall be received if the name of the person offering to vote be not on the register unless such person shall furnish to the judges of the election his affidavit that he is an inhabitant of the district and entitled to vote, and prove by

the oath of a householder and registered voter of the district that he knows such person to be an inhabitant of the district, has been held to be directory. (*Clark* v. *Robinson,* 88 Ill. 498; *Kuykendall* v. *Harker,* 89 id. 126; *Dale* v. *Irwin,* 78 id. 170.) When the votes of the seven unregistered persons were received and deposited in the ballot-box by the judges of election the presumption arose that those votes were legal votes, and this presumption continues until the contrary is shown. (*Clark* v. *Robinson, supra; Kuykendall* v. *Harker, supra; Dale* v. *Irwin, supra.*) No countervailing evidence having been adduced, the seven votes cast by the persons whose names did not appear on the register can not be rejected.

Appellant's objections concern eighteen votes. From this number the ballots of Joseph Foy and the seven unregistered voters must be deducted, leaving ten illegal votes which must be rejected. Of these ten, three were cast by aliens, three by minors and four by non-residents. It appears from the evidence that two of the non-residents, Angeline Lewis and Henry McDuffy, voted for appellee, but the evidence fails to show for whom the other eight illegal votes were cast. Where the evidence does not disclose the recipient of illegal votes, the general rule is that such votes will be eliminated by dividing them between the candidates in the proportions that the number cast for each bears to the total cast in the precinct. (*Choisser* v. *York,* 211 Ill. 56; *Humphrey* v. *Perry,* 310 id. 373; *People* v. *Cicott,* 16 Mich. 283; *Attorney General* v. *May,* 99 id. 538; *Russell* v. *McDowell,* 83 Cal. 70; *Heyfron* v. *Mahoney,* 9 Mont. 499; McCrary on Elections,—4th ed.—sec. 495.) The returns as canvassed gave appellee 219 votes. Deducting the two illegal votes which it is admitted he received, reduces his votes to 217. Adding to this number the 209 votes cast for appellant makes the total vote 426. If the eight remaining illegal votes are eliminated from this total by apportioning them between appellant and appellee in ac-

cordance with the rule approved in *Choisser* v. *York, supra,* because it cannot be determined for whom they were cast, appellant will suffer a loss of 3.92 votes and appellee a loss of 4.08 votes. Even if the fractions are resolved in appellant's favor he will lose three and appellee will lose five votes and the result will remain unchanged, for appellant will have 206 votes and appellee 212.

Appellant further complains that appellee persisted in electioneering about the polling place and that his conduct vitiated the election. Appellee, it appears, was within the area marked by flags outside of the polling place and was requested to leave by appellant, then president of the village, and by another officer. Appellee refused, exhibiting a special deputy sheriff's star, but left in about half an hour and caused no disturbance. No showing was made that he attempted to interfere with or influence voters in his behalf. The presence of an interested party, without proper credentials, within the prohibited area about a polling place is highly improper, but it does not necessarily invalidate an election in the absence of a showing of an attempt to influence voters or to interfere with their voting. (McCrary on Elections,—4th ed.—secs. 580, 582*a.*) Irregularities not proceeding from a wrongful intent, which do not change the result of an election, will not vitiate it. *Behrensmeyer* v. *Kreitz,* 135 Ill. 591.

Finally, appellant insists that the circuit court erred in denying his motion to re-open the cause for the introduction of additional testimony. The motion was made after the cause had been submitted on oral and written arguments and the court had indicated what its decision would be. There was no abuse of discretion in the denial of the motion. Moreover, appellant cannot complain of the ruling because he has not assigned error upon it. *Village of Northbrook* v. *Sterba,* 318 Ill. 360.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*