(No. 18626.—Judgment affirmed.)
ALVAH M. WESTON et al. Appellants, vs. ALBERT E. MARK-
GRAF, Appellee.

*Opinion filed February 24, 1928.*

1. ELECTIONS—*when irregularity will not affect validity of election.* While the legal safeguards which are thrown about the ballot must be faithfully observed by those entrusted with their enforcement, an election will not be defeated by failure to comply with statutory provisions or by an honest mistake of election officers where the irregularity has not hindered anyone entitled thereto from exercising the right of suffrage or rendered doubtful the evidence from which the result is to be declared.

2. SAME—*when vote in a precinct will not be defeated because of arrangement of election booths.* The entire vote in a precinct will not be rejected because the arrangement of the voting booths was not strictly in accordance with the provisions of paragraph 310 of the chapter on elections, (Smith's Stat. 1927, p. 1249,) where the statute is complied with in substance and there is no evidence of fraud or corruption, no legal voter is deprived of his opportunity to vote and no harm done to anyone by reason of irregularities on the part of election officers.

3. SAME—*election officers should preserve purity of the ballots.* Election officers have ample authority to so conduct the count that the purity of the ballots shall be above suspicion, and they should so carefully guard the ballots as to render it impossible for an outsider to have an opportunity to tamper with them.

4. SAME—*entire vote will not be disregarded where honest ballots can be separated.* The entire vote in a precinct or election district will not be rejected in an election contest on account of fraud where the honest votes can be separated from the dishonest votes and the returns purged.

APPEAL from the County Court of Will county; the. Hon. RALPH C. AUSTIN, Judge, presiding.

D. R. ANDERSON, for appellants.

WILLIAM C. MOONEY, and ROBERT W. MARTIN, for appellee.

Mr. Chief Justice Heard delivered the opinion of the court:

At the November 2, 1926, election in Will county Alvah M. Weston was the republican and Albert E. Markgraf the democratic candidate for sheriff. The canvassing board found that Markgraf received 14,338 votes and Weston 13,412, thus giving a majority of 926, whereupon Markgraf was declared elected sheriff and duly qualified. A petition was filed by Weston and three others in the county court of Will county to contest the election. The petition set out certain mistakes, illegal voting, alteration of ballots and other frauds in certain of the election districts. An examination of the ballots showed mistakes in the original count in nearly all of the election districts of the county, and there was evidence of fraud in the first, fourteenth and eighteenth election districts in the town of Joliet, beneficial to Weston in the eighteenth district and beneficial to Markgraf in the first and fourteenth districts. The fraudulent ballots in the eighteenth district are clearly distinguishable and were excluded by the trial court, and there is no dispute concerning the eighteenth district or the court's action in regard to it. The court refused to exclude the first district from the poll, and the petitioners maintained, and now maintain, that the first district should have been excluded. The court held that there was so much fraud shown in the fourteenth district that it was impossible to distinguish the fraudulent acts to arrive at a conclusion as to what the result of an honest election in this district would have been, and over the protest of the defendant excluded the fourteenth district from the poll. On the recount made by the trial court Markgraf's majority was 190⅔ and he was adjudged elected. From this judgment petitioners have appealed to this court.

Appellants' first assignment of error is, that the trial court erred in its decision concerning the objections of the petitioners and in counting the ballots objected to, of which

328—37

326 were objected to by defendant and 1221 by petitioners, classified as follows: Not initialed, 33; no cross, 42; cross outside the circle, 8; cross outside the square, 15; erasures, 82; distinguishing marks, 145; two crosses, 26; spoiled ballots, 35; crosses made by different persons on the same ballot, 1157; defaced or mutilated ballots, 4. These ballots have been certified to this court for re-examination.

With reference to this assignment of error appellants say: "Unless this question is discussed in the brief and argument of appellee I am content to let the count of the trial court stand." With reference thereto appellee says: "We join with counsel for appellants in this position except as to the court's ruling on the ballots cast in the fourteenth district, all of which were excluded by the court from the count and to which ruling we have assigned cross-error." While this court will not shirk its duty of examining the evidence in a case, however onerous that duty may be, we will not impose upon ourselves the arduous task of examining these 1547 ballots, since both sides are agreed that we shall not do so.

In the twenty-fifth election district in Joliet the election was held in an undertaking establishment, the ballot-box and judges being in the front room or office of the establishment and the booths in an adjoining room, the entrance to which was gained from the office by a door, the booths being set in a continuous semi-circle extending around this door, the side of each end booth being flush with the partition. The door could not be closed and the booths were so arranged that the only access to and egress from them was through this open doorway. The judges and clerks were all in the front room. One judge was at a table close to the open doorway, giving out ballots, and another was standing near the north side of the doorway, about a foot from it. The third judge was standing on the south side of the open doorway, taking the ballots and putting them

in the box. Each of the judges, standing by the open door-
way, could see all of the booths except one, but no booth
was not visible at all times to one or more of the judges.
The table used by the clerks was at the north side of the
doorway and about five feet west of it. The evidence dis-
closes that the booths were under the observation of the
election officers and that none of them were more than a
few feet therefrom. The ballot-boxes and election officers
were in plain view of all who might come in the front door,
as were all of the booths, with the exception of one or two
of them. No person was admitted in the room where the
booths were except voters to mark their ballots, and there
was no opportunity for any person to interfere with a voter
while he was using a booth.

Paragraph 310 of the Election law (Smith's Stat. 1927,
p. 1249,) provides that voting booths shall be provided and
so equipped that "voters may prepare their ballots, screened
from all observation as to the manner in which they do
so; and the guard-rail shall be so constructed and placed
that only such persons as are inside said rail can approach
within six feet of the ballot-box and of such voting booths.
The arrangement shall be such that the voting booths can
only be reached by passing within said guard-rail. They
shall be within plain view of the election officers, and both
they and the ballot-boxes shall be within plain view of those
outside of the guard-rail."

It is contended by appellants that by reason of the fail-
ure of the election officers to strictly comply with the above
provisions the entire poll of the twenty-fifth precinct should
have been rejected by the trial court. While there was no
guard-rail in this precinct, as the side of each of the end
booths was against the partition, the partition acted as a
guard-rail. While the end booths were not in view of more
than one of the judges, each of the judges was in a posi-
tion to see that no person other than the occupant of one

of these booths could approach the booth without being seen by all of the judges. Where a statute does not declare the performance of certain duties by public officials in connection with an election to be essential to the validity of the election, it will be regarded as mandatory if such matters affect the real merits, but will be considered directory, only, and not fatal to the election, unless they are such in themselves as to change or render doubtful the result, (*People* v. *Green,* 265 Ill. 39,) and an election will not be defeated by a failure to comply with them provided the irregularity has not hindered anyone entitled thereto from exercising the right of suffrage or render doubtful the evidence from which the result was to be declared. (*People* v. *Graham,* 267 Ill. 426; *Blattner* v. *Dietz,* 311 id. 445; *People* v. *Miller,* 314 id. 474.) Questions affecting the fairness of elections are of vital importance in this country as popular self-government depends upon their proper solution. In an unbroken line of decisions this court has held that while the legal safeguards which are thrown about the ballot must be faithfully observed by those entrusted with their enforcement, yet under the pretense of enforcing them the will of the people should not be defeated by an honest mistake of election officers, and that literal compliance with prescribed forms will not be required if the spirit of the law is not violated, and that form should be subservient to substance when no legal voter has been deprived of his vote and no injury of any kind has been done to anyone. (*People* v. *Hilliard,* 29 Ill. 413; *Patterson* v. *Johnston, ante,* p. 101.) In this precinct there was no evidence of fraud or corruption. No legal voter was deprived of his opportunity to vote, and no harm or injury was done to anyone by reason of irregularities on the part of election officers, and the trial court did not err in refusing to reject the entire vote of this precinct.

It is contended by appellants that the court should have rejected the entire vote of the first precinct in Joliet. There

was evidence of one illegal vote and of gross irregularities in making the count by the judges or clerks of the election. These irregularities seem to have been rectified by the recount. There is also evidence tending to show that "Spike" Loughran, a democratic worker, said to one of Weston's workers at the polling place early in that day, "If you ain't going to get the hell out of here I am going to knock you down," and that when another man approached he walked away, saying, "If we can't make votes we are going to steal votes." There is evidence tending to show that this same worker was allowed by the judges of the election, while the count was being had, to handle a large pile of ballots with his left hand while he tapped the ballots with a pencil held in his right hand. None of the persons who were watching him while doing so saw him make a mark upon the ballots. He denied making any marks upon the ballots, and explained his action in the premises by denying that he touched any of the ballots but that he was greatly interested in the candidacies of Brennan and Markgraf, and was taking a check of their vote and writing it down on a sample ballot. Election officers should so carefully guard the ballots as to render it impossible for an outsider to have an opportunity to tamper with them. They have ample authority to so conduct the count that the purity of the ballots shall be above suspicion. While this court has not hesitated to reject the vote of an entire precinct merely because doing so would deprive honest voters of their franchise where from the proof honest votes could not be separated from dishonest ones and the returns purged, (*Brents* v. *Smith,* 250 Ill. 521; *Laird* v. *Williams,* 281 id. 233;) in the instant case the evidence shows that the trial court was able to purge the returns of this precinct, and that it did do so. The court did not err in refusing to reject the entire vote of this precinct, as the rule is that the entire vote of a district should not be excluded in an election contest on account of

fraud where the honest votes can be separated from the dishonest votes and the returns purged. *Brents* v. *Smith, supra.*

With reference to the fourteenth precinct of Joliet, it is not necessary to discuss it further than to say that the frauds and irregularities were so glaring that the court was fully justified in rejecting the entire vote of the precinct.

From a consideration of the points argued by appellants we cannot say that the trial court erred in its conclusion, and its judgment is therefore affirmed.

*Judgment affirmed.*