14 September 1999

NO. 5-98-0743

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

______________________________________________________________________________

LEONARD DeFABIO, )  Appeal from the

)  Circuit Court of

     Petitioner-Appellee, )  Monroe County.

)

v. )  No. 96-MR-19

)

JULIE GUMMERSHEIMER, )  Honorable

)  Ellen A. Dauber,

     Respondent-Appellant. )  Judge, presiding.

______________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

Respondent, Julie Gummersheimer, appeals from the trial court's order granting petitioner's, Leonard DeFabio's, petition for election contest and declaring DeFabio to be the coroner of Monroe County.  On appeal, Gummersheimer argues that DeFabio's amended petition for election contest was time-barred, that ballots from one of the precincts should have been counted even though the election judges failed to initial those ballots, and that the trial court erred in refusing to hear evidence relative to the conduct of the election.  We affirm.

FACTS

On December 5, 1996, DeFabio filed a petition for election contest, alleging in pertinent part that he was the Democratic candidate for coroner in the November 5, 1996, general election, that Gummersheimer was the Republican candidate for coroner, and that on November 8, 1996, the Monroe County Canvassing Board declared Gummersheimer to be the winner of the coroner's race by a margin of two votes (5,660 votes for Gummersheimer and 5,658 votes for DeFabio).  DeFabio alleged in his petition that the results of the vote for coroner were invalid because none of the 524 ballots cast in precinct 2 were initialed by an election judge, as required by sections 17-9, 19-8, and 20-9 of the Election Code (10 ILCS 5/17-9, 19-8 and 20-9 (West 1996)), and that Gummersheimer received 290 votes and DeFabio received 212 votes in precinct 2.  DeFabio also alleged that several ballots in other precincts were not initialed by an election judge and that other irregularities occurred in certain precincts.  DeFabio requested the court to examine and recount the ballots in precincts 2, 11, 23, and 24, to void any ballots that were uninitialed or cast in any other improper manner, to correct the results of the coroner's election in accordance with applicable law, and to declare DeFabio the winner of the election for Monroe County coroner.  

Gummersheimer filed a motion to dismiss the petition, claiming that it was insufficient in law because it failed to include an assertion that a recount would change the results of the election.  In an order dated April 9, 1997, the trial court found, "Respondent's motion to dismiss should be denied except to the extent that Petitioner should be granted five (5) days to file an amended petition specifically alleging that the irregularities complained of likely will change the election result."  DeFabio filed an amended petition alleging the same irregularities as in his original complaint and adding the allegation,  "[A] recount herein, as a result of the above described irregularities, will change the result of the election herein."  

Gummersheimer filed a response to the amended petition, denying that a recount would change the outcome of the election and including, 
inter alia
, the following affirmative defenses:  (1) the ballots without an election judge's initials on them should be counted in order to "avoid the unconstitutional disenfranchisement of the said voters" and (2) the amended petition "is time-barred as having been filed after the statutory deadline."  

On November 18, 1997, a hearing was held to recount the votes for coroner.  At the conclusion of the hearing, DeFabio and Gummersheimer stipulated to the total number of votes for each party in each precinct recounted, and they stipulated to the number of uninitialed ballots in each precinct.  The trial court took under advisement its rulings on ballots upon which the parties could not agree, including the question of the effect of the uninitialed ballots.  

On December 1, 1997, DeFabio filed a motion for summary judgment.  In the motion, DeFabio alleged that as a result of the recount it was stipulated as follows:

"A.  Monroe County Precinct #2 - 524 votes were uninitialled [
sic
][,] and of those, 212 were cast for DeFabio and 290 were cast for Gummersheimer.  [The parties also agreed that an additional 19 votes in that precinct should not be counted, and the court ruled that an additional three ballots would not be counted, for reasons other than they lacked judge's initials.]

B.  Monroe County Precinct #11 - 1 vote was uninitialled [
sic
] and it was cast for DeFabio.

C.  Monroe County Precinct #23 - 16 votes were uninitialled [
sic
][;] 6 had been cast for DeFabio and 10 for Gummersheimer.

D.  Monroe County Precinct #24 - 42 votes were uninitialled [
sic
][;] 28 had been cast for Gummersheimer and 14 for DeFabio."

DeFabio alleged that there was no genuine issue of material fact because the legal effect of uninitialed ballots is that they may not be counted, pursuant to both the Election Code (10 ILCS 5/1-

1 
et seq.
 (West 1996)) and case law.  

Gummersheimer filed a response to the motion for summary judgment, alleging that there was a genuine issue of material fact as to the legal effect of the uninitialed ballots.  Gummersheimer also filed a memorandum of law with seven affidavits attached.  The affidavits were signed by witnesses whom Gummersheimer wanted to call to testify that the failure of the election judges to initial the ballots in precinct 2 was an unintentional mistake and that at least two registered voters who voted in precinct 2 did not notice the lack of initials on their ballots when they voted, even though both were both practicing attorneys.

On April 16, 1998, the trial court entered an order granting DeFabio's motion for summary judgment.  The trial judge's order sets forth her reasoning, in relevant part, as follows:

"None of the ballots cast in Precinct #2 were initialled [
sic
] by an election judge as required by the Election Code.  
10 I.L.C.S. 5/24A-10(1)(b).
  The issue before the court is whether these uninitialled [
sic
] ballots from Precinct #2 should be counted.  ***

After considering all relevant pleadings, memoranda[,] and argument[] and reviewing all relevant cases, the Court finds that there is no genuine issue of material fact, and Petitioner is entitled to summary judgment.  The issue of whether uninitialled [
sic
] ballots can be counted has been considered several times in Illinois, and the decision in each case has been that ballots cast in person cannot be counted, while absentee ballots may be counted under certain circumstances.  The Supreme Court has long held that initialling [
sic
] requirements for election judges are mandatory.  [Citations.]  ***

***

Respondent seeks to present evidence to show the absence of fraud, the lack of knowledge of the voters, and the innocent mistakes of the election judges.  The Supreme Court has held, however, that these issues are not relevant in determining whether to count uninitialled [
sic
] in-precinct ballots, as the initialling [
sic
] requirement is mandatory even in the absence of any fraud.  

Respondent also urges this Court to apply a different standard because application of the long-settled rule would disenfranchise an entire precinct in this case.  She asks this Court to balance the interests of a fair election against the possibility of disenfranchising an entire precinct with no showing of fraud.  The parties and the Court have been unable to find any case in which the ballots for an entire precinct would be disregarded because of the application of the initialling [
sic
] requirement, but this Court will not apply a new standard in light of clear holdings from the Supreme Court finding the initialling [
sic
] requirement to be mandatory.  In its previous holdings that the initialling [
sic
] requirement is mandatory for in-precinct ballots, the Supreme Court clearly balanced the importance of every individual's right to vote against the interest in preserving the integrity of an election.  Is that balance changed if the 524 disenfranchised voters comprise the entire voting population of the precinct, as they do in this case, or a small percentage of the voting population, as in 
McDunn
 [
v. Williams
, 156 Ill. 2d 288 (1993)]?  This court does not believe so.  It is never desirable to disenfranchise a voter, but the integrity of the election must be preserved.  

***

For the reasons stated above, the Court finds that the ballots cast in Monroe County Precinct  #2 cannot be counted.  The vote totals after this finding are:

Petitioner Leonard DeFabio 5425

Respondent Julie Gummersheimer 5333.

This Court does not declare Petitioner to be the winner at this time, but reserves jurisdiction to so order after the Respondent's tome [
sic
] to request a recount."  (Emphasis in original.)

On April 24, 1998, Gummersheimer filed a petition for a recount of 10 additional precincts, which the trial court allowed.  On October 10, 1998, the parties filed a stipulation regarding the recount of the additional precincts.  After a hearing on November 9, 1998, the trial court entered an order finding that DeFabio's first amended complaint was not time-barred and that the final number of votes cast was 5,341 for DeFabio and 5,271 for Gummersheimer.  Based upon the totals, the Court declared DeFabio to be the winner of the 1996 election for Monroe County coroner.  The court stayed enforcement of its order for 21 days.  Gummersheimer appealed the trial court's decision, and on November 25, 1998, this court granted Gummersheimer's emergency motion for stay pending the appeal.

ANALYSIS

Gummersheimer first argues that the trial court erred by finding that DeFabio's amended petition for election contest was not time-barred.  DeFabio was required, pursuant to section 23-20 of the Election Code (10 ILCS 5/23-20 (West 1996)), to file his petition for election contest within 30 days after Gummersheimer was declared to be the winner of the coroner's race.  In that petition, DeFabio was required to allege that he voted in the election, that some specified irregularity occurred in the conduct of the election in certain precincts, and that he desired a recount of the votes cast in those precincts.  See 10 ILCS 5/23-20 (West 1996).  DeFabio's initial petition for election contest was filed within 30 days of the day that Gummersheimer was declared to be the coroner, and it alleged everything required by section 23-20.

Gummersheimer argues, however, that since the trial court ordered DeFabio to amend his petition to allege that a recount would change the result of the election, and since his amended petition was filed more than 30 days after Gummersheimer was declared to be the coroner, it is time-

barred and the trial court should have dismissed it.  Gummersheimer argues that the initial petition was insufficient at law without the allegation that the recount would change the result of the election and that based upon this legal insufficiency, the trial court lost jurisdiction to permit the filing of an amended petition after the 30-day time period elapsed.  We disagree.

Section 23-23.2 provides that in an election contest such as in the case at bar, a recount of the vote is to be allowed "where, based upon the facts alleged in such petition, there appears a reasonable likelihood the recount will change the results of the election."  10 ILCS 5/23-23.2 (West 1996).  When a petition for election contest neither contains a specific allegation that a recount will change the outcome of the election nor alleges facts to show that the recount will change the outcome of the election, the petition is insufficient and may be dismissed.  See 
Zahray v. Emricson
, 25 Ill. 2d 121, 124 (1962).  If, however, the petition contains factual allegations to show that a recount will likely change the outcome of the election, then the petition is "legally sufficient under section 23-23.2."  
Gribble v. Willeford
, 190 Ill. App. 3d 610, 616 (1989).

In the case at bar, DeFabio's initial petition was filed within the allotted 30-day period and alleged facts to show that if a recount were allowed, the outcome of the election would change.  When the trial court required DeFabio to amend his petition to state the specific allegation that the recount would change the outcome of the election, it did not find that the original petition was insufficient at law.  In fact, the trial court denied Gummersheimer's motion to dismiss.  Clearly, the amended petition related back to the original petition and was timely filed.  See 
Evans v. Preckwinkle
, 259 Ill. App. 3d 187, 192 (1994).

Gummersheimer next argues that the uninitialed ballots from precinct 2 should have been counted in order to avoid disenfranchising every voter in that precinct.  This argument fails in light of supreme court authority to the contrary.  The Election Code provides that ballots that do not have the initials of an election judge shall not be counted.  10 ILCS 5/24A-10.1 (West 1996); see 
McDunn v. Williams
, 156 Ill. 2d 288, 310-11 (1993).  The supreme court "has long adhered to the rule that statutes requiring election judges to initial ballots are mandatory[] and that uninitialled [
sic
] ballots may not be counted."  
McDunn
, 156 Ill. 2d at 311.  

The only exception to this rule is for uninitialed absentee ballots that can be separated from the in-precinct ballots and readily identified, but the initialing requirement for in-precinct ballots is still mandatory, because the initialing requirement "'substantially contributes to the integrity of the election process and is a valid, mandatory provision which the courts must enforce.'"  
McDunn
, 156 Ill. 2d at 312, quoting 
Craig v. Peterson
, 39 Ill. 2d 191, 198 (1968).  "'Applying the initialling [
sic
] requirement to in-precinct ballots is certainly necessary to preserve the integrity of the election, because the initials provide the only means by which the election officials can identify and separate the legally cast from the illegally cast in-precinct ballots.'"  
McDunn
, 156 Ill. 2d at 314, quoting 
Pullen v. Mulligan
, 138 Ill. 2d 21, 53 (1990).

Here, Gummersheimer argues that since the courts have never considered the situation in which an entire precinct was disenfranchised by an inadvertent failure of the election judges to initial any of the ballots in that precinct, that factor should change the law in order to protect the rights of the disenfranchised voters.  We disagree. 

The supreme court has never placed a restriction upon the mandatory requirement that every in-precinct ballot must be initialed by an election judge in order to be counted.  It seems obvious to this court that the initialing requirement must apply regardless of the number of voters affected, or not apply at all.  If we were to accept Gummersheimer's argument, it could result in the unacceptable situation where uninitialed ballots from one small precinct were counted, but uninitialed ballots from various other precincts, the total of which amounted to a greater number of ballots than in the single precinct, were not counted.  It would create the unfair situation in which your vote counted or not based only upon the fortuity of where you voted.  The supreme court's decisions do not allow for this.  In 
Morandi v. Heiman
, 23 Ill. 2d 365, 374 (1961), wherein the supreme court rejected a similar argument, stating: 

"To attempt to identify a validly cast ballot from an illegal one upon such fortuitous circumstance would be a dangerous rule to permit to creep into the conduct of our elections." 

The only exception to the rule that uninitialed ballots may not be counted is for absentee ballots that are separated from the in-precinct ballots and can be readily identified.  The rationale for this exception is stated by the supreme court in 
Pullen
:

"Because absentee ballots are not cast in the polling place[] and are not opened until after the polls have closed, application of the initialling [
sic
] requirement to such ballots is not necessary to prevent voters from fraudulently stuffing ballot boxes."  
Pullen
, 138 Ill. 2d at 53.

Gummersheimer offers no analogous rationale to support her proposed exception for counting uninitialed ballots, other than the simple conclusion that they comprise an entire precinct.  We disagree that such an exception is allowed under long-standing supreme court authority or under the Election Code, and we find that such a rule would be unworkable and unfair.  The rule that in-

precinct ballots may not be counted allows each individual voter to preserve his or her vote by checking to make sure that an election judge has initialed the ballot before voting.  See 
McDunn
, 156 Ill. 2d at 313, citing 
Craig
, 39 Ill. 2d at 201.  A rule that would allow uninitialed ballots to be counted simply because they comprise an entire precinct would absolve the voters from checking their ballots in the precincts in which no election judge initialed any of the ballots but would penalize the voters who failed to check their ballots for judge's initials in other precincts where the omission of the election judge's initials was a mere random occurrence.  Accordingly, we affirm the trial court's ruling that none of the uninitialed ballots from this Monroe County election were to be counted.       

Gummersheimer's final argument is that the trial court erred by refusing to allow her to present evidence regarding the conduct of the election.  Essentially, Gummersheimer sought to present evidence to show that there was an absence of fraud in precinct 2, that the voters lacked  knowledge of any problem with the ballots, and that the failure to initial the ballots was an inadvertent mistake on the part of the precinct 2 election judges.  This argument fails.

The only cases Gummersheimer cites in support of this proposition deal with uninitialed absentee ballots, and the evidence was presented in those cases for the purpose of determining whether the absentee ballots were separated from the in-precinct ballots and whether those absentee ballots could be readily identified.  See 
Bazydlo v. Volant
, 164 Ill. 2d 207, 210-11 (1995); 
Pullen
, 138 Ill. 2d at 53.  Such evidence is necessary to the application of the exception.  The trial court was correct in finding that without some evidence of fraud, evidence of the conduct of the election is irrelevant.  

In 
McDunn
, the supreme court rejected a similar argument.  In that case, the candidate who lost the election after a recount argued that the uninitialed ballots should be counted because "they were legally cast and only uninitialled [
sic
] due to innocent mistake."  
McDunn
, 156 Ill. 2d at 318. The supreme court summarily rejected the appellant's argument:

"This assertion is faulty, however, for the legislature has created the reasonable presumption that uninitialled [
sic
] ballots are not legally cast[] and should not be counted.  Moreover, '[j]udges of election are presumed to perform the duties required of them by statute.'  [Citations.]  Thus, it must be presumed that 
the judges of election performed their duty and initialled [
sic
] the ballots, and that the uninitialled [
sic
] ballots were not legally cast."  
McDunn
, 156 Ill. 2d at 318.  

For all of the reasons stated, we affirm the trial court's order finding DeFabio to be the winner of the 1996 Monroe County coroner's election.

Affirmed.

CHAPMAN, J., concurs.

WELCH, J., dissenting:

For reasons which follow, I respectfully dissent from the majority's decision that the trial court did not err in refusing to allow respondent an opportunity to present evidence regarding the conduct of the election, that is, that it was free from fraud and that the uninitialed ballots cast in precinct #2 were legally cast.  Relying on 
McDunn v. Williams
, 156 Ill. 2d 288 (1996), the majority holds that such evidence is irrelevant where the initialing requirement is mandatory, uninitialed ballots are not to be counted, and none of the ballots cast in precinct #2 were initialed.  It is my opinion that, in the circumstances presented in the case at bar, where 
none
 of the ballots in a precinct were initialed as required by the Election Code, the initialing requirement should be deemed to be directory and not mandatory.  Accordingly, respondent should have been allowed to present evidence that the votes cast in precinct #2 were legally cast despite the absence of the initials of the election judges.

As the majority points out, the Illinois Supreme Court has most recently held, in 
McDunn
, 156 Ill. 2d at 311,  that the initialing requirements are mandatory and that uninitialed ballots may not be counted.  This had also been the position of the court prior to its decision in 
Craig v. Peterson
, 39 Ill. 2d 191 (1968).  In 
Craig
, the court recognized its existing rule that only initialed ballots may be counted, but it stated, "We have not, however, considered the question in the context here presented ***."  
Craig
, 39 Ill. 2d at 194.  Similarly, the court has never considered the initialing requirement in the context presented here, where the election judges failed in their duties and failed to initial 
any
 and 
all
 of the ballots in a precinct and where there is no evidence of any voting fraud.  I believe that the Illinois Supreme Court would find, as it did in 
Craig
,  that under the circumstances here, the initialing requirement is directory,  not mandatory.  Let me explain.

It is well settled that the purpose of the initialing requirement is to prevent fraud in the election process, particularly by providing a means of separating legally cast ballots (initialed) from illegally cast ballots (uninitialed) and preventing the practice of "stuffing" the ballot box.

"'[T]here must, *** in order to prevent fraud, be some method whereby illegally cast ballots may be distinguished and rejected.  The initialing provision is the principal method chosen by the legislature for accomplishing this purpose since the judge who has indorsed his initials upon the ballot can thereafter identify that ballot as legally cast.'"  
McDunn
, 156 Ill. 2d at 312, quoting 
Craig
, 39 Ill. 2d at 200-01.  

"'[T]he initials provide the only means by which the election officials can identify and separate the legally cast from the illegally cast in-precinct ballots.'"  
McDunn
, 156 Ill. 2d at 314, quoting 
Pullen v. Mulligan
, 138 Ill. 2d 21, 53 (1990).  

Thus, the only purpose of the initialing requirement is to preserve the integrity of the election process.

It seems obvious to me that this purpose of protecting the integrity of the election process by providing a means to separate legally cast from illegally cast ballots is not served by the mandatory application of the initialing requirement in the case at bar.  
None
 of the ballots cast in precinct #2 were initialed.  The mandatory application of the initialing requirement under these circumstances creates the presumption that all of the ballots cast in precinct #2 were cast illegally, a presumption that seems patently unreasonable.  The more reasonable presumption is that the election judges simply failed to fulfill their statutory duty to initial each and every ballot cast.  Accordingly, mandatory application of the initialing requirement lends nothing to the integrity of the election process in precinct #2.

In 
McDunn
, 156 Ill. 2d at 312, the court repeated what it had held in 
Craig
--statutes that do not contribute substantially to the integrity of the election process are usually held to be directory, not mandatory.  In 
Craig
, the court created an exception to the mandatory initialing requirement:  

"The statute requires the ballots to be initialled [
sic
], it commands that no unindorsed ballot shall be counted, this requirement substantially contributes to the integrity of the election process[,] and [it] is a valid, mandatory provision which the courts must enforce.  But this reasoning simply does not apply with equal force to the situation before us where the initialling [
sic
] requirement, in the circumstances of this case, contributes not at all to the integrity of the election process:  *** it does not assist in separating the illegally cast from the legally cast ballots for there were no other paper ballots for public offices and there is no claim that these absentee ballots were altered, tampered with[,] or in any way improperly preserved ***.  The net result of a mandatory application of the initialling [
sic
] requirement to the absentee ballots in the circumstances of this case would be to disenfranchise a substantial number of qualified voters *** where, as here, the rule causing their disenfranchisement made no substantial contribution to the integrity of this election."  
Craig
, 39 Ill. 2d at 198-99.

Similarly, in the case at bar, the mandatory application of the initialing requirement serves no purpose other than to disenfranchise an entire precinct of voters.  I simply do not believe that the legislature intended for the initialing requirement to apply in this circumstance any more than it applied in the circumstances presented in 
Craig
.  

In this regard, I am advised by Justice Freeman's dissent in 
McDunn
, 156 Ill. 2d at 343-53.  As he pointed out, the right to vote, which includes the right to have a vote counted, is a fundamental right, and any legislation which operates to impair that right is subject to strict scrutiny.  
McDunn
, 156 Ill. 2d at 350.  As I have already stated, mandatory application of the initialing requirement under the facts of the case at bar simply does not achieve the legislative goal of preserving the integrity of the election process.  Furthermore, I agree with Justice Freeman that it is an unnecessary and unreasonable burden to require each voter to know the ballot-initialing requirement and to search his or her ballot for an election judge's initials.  See 
McDunn
, 156 Ill. 2d at 352.  I find persuasive the following language:  

"'The individual voter may well be called upon to see that the requirements of the law 
applying to himself
 are complied with before casting his ballot, and if he should willfully or carelessly violate the same, there would be no hardship or injustice in depriving him of his vote; but if, on the other hand, he should in good faith comply with the law upon his part, it would be a great hardship were he deprived of his ballot 
through some fault or mistake of an election officer
 in failing to comply with a provision of the law over which the voter had no control.'"  (Emphasis in original.)  
McDunn
, 156 Ill. 2d at 352 (Freeman, J., dissenting), quoting 
Moyer v. Van De Vanter
, 12 Wash. 377, 382-83, 41 P. 60, 61 (1895). 

As Justice Freeman stated, "
The mandatory construction *** disenfranchises an innocent, qualified voter based on the failure or omission of an election judge
.  If the legislature can enact a law whereby election judges can effectively disenfranchise all of the voters of a precinct, where those voters are not at fault, then the constitutional right to vote is of small consequence."  (Emphasis in original.)  
McDunn
, 156 Ill. 2d at 351-52. 

I believe that voters should be able to rely on public officials to do their duty.  Voters should not be penalized--disenfranchised--because an election judge, through no fault of the voter, has failed to fulfill his statutory duty.  And yet that is the effect of the trial court's decision in this case.  In my opinion, the trial court should have found the initialing requirement to be directory, not mandatory, and should have permitted respondent to present evidence as to the conduct of the election in precinct #2 to determine if the ballots were legally cast.

"'A voter should not be deprived of his vote by a mistake of election officers where he is not at fault, and the ballot itself, or other evidence in the record, shows that the ballot is genuine, delivered by the judges to the voter and by him voted, and that the lack of the judges' initials was caused by mistake.  The initials of a judge in his handwriting are for the purpose of identifying the ballot, but if the ballot can be fully identified, even in the absence of the initials, and it is shown that it was cast by a legal voter, it should be counted.'"  
McDunn
, 156 Ill. 2d at 353 (Freeman, J., dissenting), quoting 
Slenker v. Engel
, 250 Ill. 499, 511-12 (1911) (Carter, C.J., dissenting).  

Keeping in mind our duty to interpret a statute so as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity (see 
Craig
, 39 Ill. 2d at 201), I would hold that the statutory requirements relating to the initialing of ballots by election judges are directory, rather than mandatory, under the facts of this case, where all the ballots cast in a precinct are uninitialed and there are no allegations of fraud in the voting process.  

The majority finds that respondent is not entitled to present evidence as to the legality of the ballots cast in precinct #2, based on the following language from 
McDunn
:

"[T]he legislature has created the reasonable presumption that uninitialled [
sic
] ballots are not legally cast[] and should not be counted.  Moreover, '[j]udges of election are presumed to perform the duties required of them by statute.'"  
McDunn
, 156 Ill. 2d at 318, quoting 
In re Contest of Election for Offices of Governor & Lieutenant Governor
, 93 Ill.2d 463, 480 (1983).

It is clear to me that these presumptions simply do not apply here.  In this case there can be no reasonable presumption that the uninitialed ballots were not legally cast, nor can there be a reasonable presumption that the election judges performed the duties required of them by statute.  Petitioner does not argue that all of the ballots cast in precinct #2 were not legally cast.  The election judges in precinct #2 did not perform the duties required of them by statute.  Respondent should have been permitted to present evidence pertaining to the legality of the ballots cast in precinct #2.

If I believed that the majority was following a decision of the Illinois Supreme Court, I would concur in their decision.  However, the Illinois Supreme Court has never ruled on the issue presented here:  whether the failure of the election judges, through ignorance, oversight, or otherwise, to initial any of the ballots in their precinct should be allowed to result in the total disenfranchisement of an entire precinct of voters, where there is no evidence of any fraud in the election process in that precinct.  Accordingly, I dissent.