NO. 5-00-0381

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

SUSAN C. HILEMAN, )  Appeal from the

)  Circuit Court of

     Petitioner-Appellee, )  Alexander County.

)

v. )  No. 2000-MR-24

)

SHARON McGINNESS, )

)

     Respondent-Appellant, )

)

and )

)  

LOUIS MAZE, )  Honorable 

)  John Speroni,

     Respondent. )  Judge, presiding.

________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

On March 16, 2000, five days before the Alexander County primary election, agents of the Illinois State Police and the Illinois Attorney General's office appeared at the Alexander County clerk's office with a search warrant.  Six hundred eighty-one absentee ballots designated for the March 21, 2000, Democratic Party primary election were confiscated.  The 681 ballots were returned to the county clerk on the day of the primary.  These ballots were commingled with and counted with all of the ballots that were cast at the polls.  

Louis Maze is the Alexander County clerk.  Susan Hileman is the current Alexander County circuit clerk.  Both Susan Hileman and Sharon McGinness were candidates in the March 21, 2000, primary election for the Democratic nomination for circuit clerk.  The initial primary election results indicated that 1,299 votes were cast for McGinness and 1,089 votes were cast for Hileman.  The total number of votes cast was 2,388.  The winning margin for McGinness was 210 votes.  In terms of percentages, McGinness won with approximately 54.3% of the vote, while Hileman received approximately 45.7% of the vote.  

After the primary, Hileman filed a petition to contest the election and asked the court to declare all of the ballots cast void due to election irregularities, illegalities, and fraud.  Hileman also asked for the absentee ballots to be declared void and to be excluded from the vote count or, in the alternative, for the primary election to be declared void and for a new election to be held.  The circuit court declared the result of the primary election for the Democratic candidate for circuit clerk invalid, and it ordered a new primary election to be held.  McGinness appeals.  We reverse and remand for further proceedings.

The trial court did not hold an evidentiary hearing regarding the allegations of fraud; thus, no fraud was actually established.  The parties agree, however,  that the absentee ballots are presumed invalid.  The parties also agree that there are no markings or indications upon the absentee ballots which would allow them to be segregated from all other ballots cast.  Thus, there is no way to distinguish the 681 ballots from any other vote cast in the primary election.  The parties disagree as to the appropriate solution to the situation.  The dispute concerns the legal issue of how to remedy the commingling of the invalid ballots.  Disputed questions of law are reviewed 
de novo
.  
Statler v. Catalano
, 293 Ill. App. 3d 483, 486, 691 N.E.2d 384, 386 (1997). 

McGinness argues that although the 681 absentee ballots must be presumed invalid, the loss of those votes must be prorated or apportioned between Hileman and McGinness.  McGinness contends that the 681 void ballots should be apportioned to the candidates in the same percentages that they received in the initial canvass.  Those votes would then be deducted from the current totals, which include the admittedly indistinguishable and illegal ballots.  McGinness cites 
Neff v. George
, 364 Ill. 306, 4 N.E.2d 388 (1936), in support of her argument.

Neff
 concerned an election for county sheriff in which 71 votes were deemed illegal because they were cast by nonresidents.  In that case it could not be determined for which candidate the 71 ballots were cast.  The court declined to exclude or apportion any of the votes.  Using the terms "exclude" and "apportion" interchangeably, the court noted that if it had excluded the votes, it would have apportioned them between the candidates in the proportions that the number of votes cast for each bore to the total votes cast in the precinct.  
Neff
, 364 Ill. 306, 4 N.E.2d at 392.  Although the court recognized apportionment as an appropriate option, it noted that it was not going to consider whether exclusion was improper, because an apportionment or exclusion of the 71 votes would not change the result of the election.  

Throughout the years the Illinois Supreme Court and the Fifth District of the Appellate Court have addressed the issue of apportionment versus exclusion under various scenarios.  The cases can generally be divided into two types: those that favor exclusion of the ballots and those that favor apportionment.  

In some election-contest cases, the ballots either are improperly endorsed by election judges or are not otherwise endorsed in accordance with statutory election procedure.  As a rule, if there is no showing of fraud but the election process has been tainted by the failure to follow proper statutory procedures, the supreme court has held that the tainted ballots should be excluded.  See 
DeFabio v. Gummersheimer
, 192 Ill. 2d 63, 733 N.E.2d 1241 (2000); 
Laird v. Williams
, 281 Ill. 233, 118 N.E. 73 (1917); 
Brents v. Smith
, 250 Ill. 521, 95 N.E. 484 (1911); 
Choisser v. York
, 211 Ill. 56, 71 N.E. 940 (1904).

The Fifth District Appellate Court has followed the supreme court holdings.  See 
DeFabio v. Gummersheimer
, 307 Ill. App. 3d 381, 717 N.E.2d 540 (1999) (an entire precinct's ballots were excluded because ballots were not initialed by an election judge), 
aff'd
, 192 Ill. 2d 63, 733 N.E.2d 1241 (2000); 
Leach v. Johnson
, 20 Ill. App. 3d 713, 313 N.E.2d 636 (1974) (36 nonresident voters' ballots were excluded); 
Webb v. Benton Consolidated High School District No. 103
, 130 Ill. App. 2d 824, 264 N.E.2d 415 (1970) (10 ballots were excluded because an improper election procedure was utilized).  

Exclusion rather than apportionment is also the procedure of choice where fraud is involved.  See 
Weston v. Markgraf
, 328 Ill. 576, 160 N.E. 215 (1928); 
Emery v. Hennessy
, 331 Ill. 296, 162 N.E. 835 (1928); 
Clark v. Quick
, 377 Ill. 424, 36 N.E.2d 563 (1941); 
Lehman v. Hill
, 414 Ill. 173, 111 N.E.2d 120 (1953).  

In an election contest where no fraud is involved, the exclusion of ballots is a simple remedy if the irregular ballots are easily distinguishable from the total tally.  However, in cases with no fraud but where it cannot be determined for which candidate a ballot is cast, exclusion is impossible.  In those cases, the supreme court has opted for apportionment.  See 

Thornton v. Gardner
, 30 Ill. 2d 234, 195 N.E.2d 723 (1964) (7 voters voted at the wrong polling place); 
McNabb v. Hamilton
, 349 Ill. 209, 181 N.E. 646 (1932) (election judges improperly initialed ballots); 
Flowers v. Kellar
, 322 Ill. 265, 153 N.E. 351 (1926) (voters were ineligible to vote); 
Choisser v. York
, 211 Ill. 56, 71 N.E. 940 (1904) (6 nonresidents voted and 30 votes were cast outside the voting booth); see also 
Smoda v. Gallagher
, 412 Ill. 271, 106 N.E.2d 181 (1952) (the court could not apportion because there was only one precinct, but the court would have apportioned it if it were possible); 
In re Contest of  Election for Offices of Governor & Lieutenant Governor
, 93 Ill. 2d 463, 444 N.E.2d 170 (1983) (the court would have apportioned if the pleadings had been sufficient).  

It appears that the Fifth District Appellate Court also chooses apportionment if  tainted ballots are commingled but there is no evidence of fraud.  See 
Webb v. Benton Consolidated High School District No. 103
, 130 Ill. App. 2d 824, 264 N.E.2d 415 (1970) (absentee ballots were tainted because of numerous procedural violations); 
Whitsell v. Davis
, 67 Ill. App. 3d 962, 385 N.E.2d 729 (1978) (6 missing ballots were apportioned); 
Jordan v. Officer
, 170 Ill. App. 3d 776, 525 N.E.2d 1067 (1988) (600 to 700 ineligible voters' ballots were apportioned).  

Here, the trial court did not hold an evidentiary hearing on the allegations of fraud.  Given case precedent, if fraud is shown to have permeated the electoral process, the ballots should be excluded.  Because the absentee ballots were commingled in this case, the court would then have no choice but to void the election and to order a new primary election.  

If there is no evidence of fraud, case precedent suggests that the 681 confiscated absentee ballots should be apportioned between the candidates in the same percentages that they received in the initial canvass.  The 681 votes would then be deducted from the current totals.  

Given the effect a finding of fraud would have on this election contest, we remand this cause to the trial court with directions that the trial court hear evidence if necessary and then make a decision as to whether fraud was evident in the electoral process.  Depending on the trial court's findings on the fraud issue, a ruling should then be made in accordance with this opinion–either to apportion the ballots or to hold a new primary election.  

Reversed; cause remanded with directions. 

MAAG, J., concurs.

JUSTICE WELCH, dissenting.

The majority remands this case so that an evidentiary hearing can be conducted to determine whether there was fraud in the electoral process.  The majority then states that if the trial court finds fraud, the ballots should be excluded and a new election should be conducted.  The majority states, however, that if the trial court does not find fraud, "case precedent suggests" that the 681 illegal ballots should be apportioned between the candidates "in the same percentages that they received in the initial canvass."  Slip op. at 5.  It is my belief, a belief shared by the trial court, that a new election is required because, due to the commingling of the legal and illegal ballots, apportionment cannot be performed without counting the illegal ballots.  Counting the illegal ballots is contrary to Illinois law, is contrary to the agreement of the parties, and offends the integrity of this election.  As apportionment in this case legitimizes the illegal ballots by essentially treating them in the same capacity as the legal ballots, I believe that apportionment is improper and that a new election is required to uphold the sanctity and integrity of this election.

The parties agree that 681 of the 2,388 total ballots are illegal and 
should not be counted
.  The parties also agree that these 681 illegal ballots are commingled with the 1707 legal ballots and that there is no way to determine which ballots are the legal ballots and which ballots are the illegal ballots.  In other words, due to the commingling of the legal and illegal ballots, the pool of total ballots has been permanently contaminated.  The solution requested by defendant, and the alternative solution that the majority claims "case precedent suggests," requires a counting of the 681 illegal ballots along with the 1,707 legal ballots (because there is no way to distinguish the legal from the illegal ballots) to determine what percentage of the vote went to each candidate.  Then that percentage is multiplied by the 681 illegal ballots (which were counted to reach that percentage) to determine how many ballots are apportioned to each candidate.  I believe that such a result is absurd in that it legitimizes the illegal ballots while diminishing the effect of the legal ballots.

In 
McNabb v. Hamilton
, 349 Ill. 209 (1932), our supreme court was very instructive in how to handle apportionment.  The court was faced with a situation where there were several legal and illegal votes cast and some of the legal votes were commingled with the illegal votes.  The supreme court was extremely careful not to count the illegal votes when determining what percentage of unidentifiable legal votes should be apportioned to each candidate.  In 
McNabb
, the total number of votes cast was 633.  Seventeen votes were identified and rejected as defective, lowering the total to 616.  Of these 616 votes, 325 votes were found to be legal and 291 were found to be illegal.  Of the 325 legal votes, there was no difficulty in determining for whom 195 of these legal votes were cast.  However, the remaining 130 legal votes were commingled with the 291 illegal votes so that it was impossible to determine from these remaining votes for whom the 130 legal votes were cast.  The court then decided that the proper way to apportion these 130 legal votes was to calculate what percentage of votes each candidate obtained based on the 195 legally identifiable votes and then to apply that percentage to the 130 unidentifiable legal votes and apportion that number to the respective candidate.  Most importantly, in 
McNabb
, the supreme court derived this percentage by counting only the legally identifiable votes and did not derive the apportionment percentage by counting the contaminated pool of legal and illegal votes, like the majority in the instant case says "case precedent suggests."

Our supreme court has made clear that the apportionment of votes must be based on the number of 
legal
 votes cast.  
Thornton v. Gardner
, 30 Ill. 2d 234, 235 (1964).  Furthermore, where the illegal votes cannot be "segregated, proved, and exactly computed," apportionment is not proper.  
Lehman v. Hill
, 414 Ill. 173, 178-79 (1953).  In 
Drolet v. Stentz
, 83 Ill. App. 2d 202, 207 (1967), this court stated: "We cannot determine the number of legal votes cast for either party.  We cannot apportion."

As I stated earlier and the majority notes in its opinion, 
both parties
 agree that the illegal ballots should not be counted.  However, if an apportionment is performed in this case, the illegal ballots essentially will be counted because they are commingled with the legal ballots.  I acknowledge that there appears to be some authority which does count illegal votes in determining how to apportion illegal votes (
Webb v. Benton Consolidated High School District No. 103
, 130 Ill. App. 2d 824 (1970)), but I believe that such a method runs contrary to the law in Illinois and wrongfully legitimizes the illegal votes by allowing the illegal votes to have an impact in the election.  In conclusion, I agree with the trial court that apportionment is inappropriate in the instant case, and therefore, I would affirm the judgment of the circuit court.